**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Christopher Crosby

    v.                            Civil No. 12-cv-383-LM
                                        Opinion No. 2014 DNH 182

Strafford County Department of
Corrections, Correction Officer
Leonard Nadeau, Correction
Officer Joseph Darko-Meusha,
Correction Officer Brent Chapel,
Correction Officer David Baggs,
Lt. Donna Roy, Sgt. Edward
McGowen, Cpl. Gary Cormier, and
Jacob Braley


## O R D E R


    Plaintiff is a former pre-trial detainee at the Strafford
County House of Corrections ("SCHOC").  He has sued nine
defendants in eight counts, asserting three federal and five
state claims, all arising out of a beating he received from
Jacob Braley, a fellow inmate at the SCHOC.  Before the court is
a motion for summary judgment filed by all defendants other
than: (1) Sgt. Edward McGowen, who appears never to have been
served; and (2) Jacob Braley.  Specifically, the movants seek
summary judgment on plaintiff's federal claims and ask the court
to decline to exercise supplemental jurisdiction over his state-
law claims.  Plaintiff objects.  For the reasons that follow,
summary judgment is granted.  The court, however, retains
jurisdiction over plaintiff's state-law claims.

**Summary Judgment Standard**

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)). Thus, "[c]onclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (quoting Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).  "Rather, the party seeking to avoid summary judgment must be able to

point to specific, competent evidence to support his [or her]

claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio

v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal

quotation marks omitted).

**Background**

Unless otherwise indicated, the facts recited in this

section are undisputed.

Christopher Crosby entered the SCHOC on September 13, 2011,

as a pre-trial detainee.  He was housed in the protective-

custody unit.  Between September 24 and September 28, Braley

told Crosby that "he would kick [Crosby's] butt . . . but . . .

he was afraid [that Crosby would] tell on him."  Defs.' Mem. of

Law, Ex. A (doc. no. 30-2), Crosby Dep. 34:7-9, Mar. 10, 2004.

In his deposition, Crosby testified that this was the only

threat that Braley ever made against him prior to the incident

that gives rise to this suit.  See id. at 35:3-6.  Between

September 13 and October 20, 2011, various other inmates also

made threats against Crosby and harassed him, in ways that are

not well specified in Crosby's complaint or in the summary-

judgment record.  There is evidence to suggest that the

animosity toward Crosby was based upon the other inmates'

perception of him as a sex offender.  Crosby made oral reports

of the threats and harassment to most of the correction officer

3

defendants.[1]  Some or all of them responded by telling Crosby that there was nothing they could do unless they witnessed the conduct that Crosby was complaining about.

At some point before October 20, Crosby directed an inmate request slip to the jail's classification officer, David Baggs, complaining about threats and harassment by various inmates.  In response, Officer Baggs spoke with Crosby.  Shortly thereafter, Officer Baggs "came to the pod and he announced that if . . . the harassment and the threats on the pod . . . didn't stop, that there was going to be some type of punishment."  Crosby Dep. 67:7-12.  However, according to Crosby, Officer Baggs "didn't mention any names or anything."  Id. at 67:8-9.

On October 20, while Crosby was playing basketball with Braley, Braley initiated a physical confrontation that resulted in a variety of injuries to Crosby.[2]  Crosby described the events leading up to his assault this way:

_____

[1] Those reports appear to have been somewhat imprecise.  For example, when asked at his deposition to report what he said to Cpl. Gary Cormier about Braley's threat, Crosby responded: "I just said he was harassing me and threatening me.  I didn't say exactly what he said."  Crosby Dep. 103:3-4.

[2] In his deposition, Crosby testified that he had played basketball with Braley on several occasions prior to October 20, and that he had done so without incident.  See Crosby Dep. 89: 14-20.  Moreover, he testified that in the recreation yard, he got along with all the inmates who allegedly harassed and threatened him on the pod.  See Crosby Dep. 89: 2-13.

> I was winning.  And then [Braley] scored 1 after that.
> And then . . . I scored the next 2.  On the sixth
> basket, he said . . . "Crosby, if you make this next
> basket, I am going to choke you out."

Id. at 76:1-5.  In his affidavit, Crosby describes the genesis

of Braley's actions in the following way:

> Officer Baggs' announcement had the effect of
> informing the entire pod that I had reported the
> threats and harassment.  That announcement made the
> threats and harassment worse.  Within a week of Baggs'
> announcement, Braley assaulted me.  Since the threats
> and harassment got worse after Officer Baggs'
> announcement, resulting in Braley's assault, I believe
> Baggs' announcement contributed to the assault.

> I was afraid to ask for help from SCHOC after the
> beating because, when I made a report to Officer
> Baggs, he made an announcement that worsened the
> threats and harassment and resulted in Braley
> assaulting me.

Pl.'s Obj., Ex. 1, Crosby Aff. (doc. no. 35-2) ¶¶ 7 & 8.

On December 9, 2011, Crosby directed an inmate request slip

to Captain Bruce Pelkie in which he inquired about the status of

the criminal charges that had been brought against Braley as a

result of the incident on October 20.

While Crosby was incarcerated in the SCHOC, the jail's

inmate handbook, which Crosby received, described a grievance

procedure that included both: (1) provisions for verbal/informal

resolution of inmate complaints; and (2) a formal three-step

process for the submission and resolution of written complaints.

The policy required initiation of the informal process "within

seven days (7) of the discovery of a grievable issue," Defs.'
Mem. of Law, Pelkie Aff., Ex. B (doc. no. 30-5), at 29, and
required submission of a "written/formal grievance within
fourteen (14) days of discovery of the grievable issue," id.
Here, it is undisputed that Crosby did not attempt to use either
of the two grievance procedures available to him to complain
about his assault within the time allotted in the inmate
handbook.

In this suit, Crosby asserts the following claims: (1) a
claim against all seven correction officers, for failing to
protect him, in violation of the Fourteenth Amendment to the
United States Constitution (Count I);[3] (2) a claim against Lt.
Donna Roy, Sgt. McGowen, and Cpl. Gary Cormier, under a
supervisory-liability theory, for failing to protect him, in
violation of the Fourteenth Amendment (Count II); (3) a claim
against the Strafford County Department of Corrections ("SCDC"),
under a municipal-liability theory, for failing to protect him,
in violation of the Fourteenth Amendment (Count IV); (4)
negligence, under the common law of New Hampshire, against all
seven correction officers (Count VI); (5) negligent supervision,
under the common law of New Hampshire, against the SCDC (Count

---

[3] Crosby has brought this claim, and his two other federal
constitutional claims (Counts II and IV), under the aegis of 42
U.S.C. § 1983.

VII-A); (6) negligent failure to protect, under the common law of New Hampshire, against the SCDC (Count VII-B); (7) respondeat superior, against the SCDC (Count VIII); and (8) assault and battery, against Braley (Count IX).

### Discussion

The six correction officers who have been served and the SCDC (hereinafter "defendants") move for summary judgment on Crosby's federal claims on four grounds: (1) Crosby failed to exhaust the administrative remedies available to him; (2) defendants Nadeau, Darko-Meusha, Chapel, Baggs, Roy, and Cormier are protected by qualified immunity; (3) Crosby's supervisory-liability claim, stated in Count II, fails as a matter of law; and (4) Crosby's municipal-liability claim, stated in Count IV, fails as a matter of law. Defendants' first argument is persuasive, and dispositive.

A. Exhaustion

According to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Claims for which administrative remedies have not been exhausted are subject to

dismissal.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007).  As such, it "must be raised and proved by the defense." Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216).  Finally, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing Wilson v. Seiter, 501 U.S. 294, 299 n.1 (1991)).

However, under certain circumstances a prisoner's failure to exhaust may be excused.  Specifically:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner.  Abney v. McGinnis, 380 F.3d 663 [(2d Cir. 2004)].  The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, Johnson v. Testman, 380 F.3d 691 [(2d Cir. 2004)], or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, Ziemba [v. Wezner], 366 F.3d [161,,] 163 [(2d Cir. 2004)].

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (parallel citation omitted).[4]   In addition, the Hemphill court explained that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." 380 F.3d at 689.  Here, Crosby invokes the theories of unavailability and estoppel, along with the doctrine of special circumstances.

### 1. A Preliminary Matter

This case arises out of Crosby's assault, and defendants argue that Crosby took no steps, either formal or informal, to grieve that incident.  In response to defendants' exhaustion argument, Crosby devotes most of his attention to explaining why he did not  formally grieve either: (1) the harassment and

---

[4] "[T]he First Circuit does not appear to have had an opportunity to rule on whether the failure to exhaust may be excused in the context of a prisoner section 1983 claim." Bean v. Barnart, No. 1:13-cv-00196-NT, 2014 WL 1922845, at *5 (D. Me. May 13, 2004).  This court, like several others in this district and circuit, regards Hemphill as persuasive authority.  That said, Judge Torresen has recently noted that in Amador v. Andrews, 665 F.3d 89, 102 (2d Cir. 2011), "[t]he Second Circuit . . . questioned whether the doctrines of estoppel and special circumstances survived the Supreme Court's decision in Woodford [v. Ngo, 548 U.S. 81, 93 (2006)], requiring proper exhaustion." Bean, 2014 WL 1922845, at *5 n.4.

threats he claims to have suffered in the weeks leading up to his assault; and/or (2) the responses of various correction officers to his attempts to informally grieve those incidents. The only questions before the court, however, are whether Crosby exhausted the administrative remedies available to him with regard to his assault and, if not, whether he was excused from doing so.

As for the first question, it is undisputed that Crosby did not attempt to use the informal grievance process within seven days of his assault nor did he attempt to use the formal grievance process within fourteen days of his assault. Thus, Crosby has not exhausted the administrative remedies available to him. The only question, then, is whether, under the circumstances of this case, Crosby was excused from the exhaustion requirement.

### 2. Unavailability and Estoppel

Crosby relies upon both the alleged unavailability of administrative remedies and the allied theory of estoppel. See Ojo v. Medic, No. 11-cv-210-JL, 2012 WL 7150497 (D.N.H. Dec. 17, 2012), report and recommendation approved, 2013 WL 593485 (D.N.H. Feb. 14, 2013) (pointing out the convergence between the theories of unavailability and estoppel). He frames his argument this way:

> Crosby reasonably became afraid to ask for help from
> the SCHOC after the beating because Baggs'
> announcement worsened the harassment and threats,
> resulting in a beating.  Crosby Aff. ¶ 8.  Between the
> Correction Officers' refusal to take action, the
> supervisor's reiteration of the same policy of
> inaction, and Baggs' announcement to the pod, the
> SCHOC defendants rendered the grievance process
> unavailable to Crosby.

Pl.'s Mem. of Law (doc. no. 35-1) 13.

Application of either the unavailability theory or the estoppel theory typically entails a focus on the actions or inactions of corrections officers, and a determination of whether their conduct prevented a prisoner from exhausting his or her administrative remedies.  See Thompson v. Gordon, No. 09-cv-82-SM, 2010 WL 2629416, at *2 (D.N.H. June 28, 2010) ("estoppel principles may nullify the exhaustion requirement, but that type of estoppel must be based upon what the defendants themselves said or did").  Generally, the calculus requires affirmative misconduct on the part of a corrections employee, see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) (quoting Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006)), and further requires that the misconduct was sufficient to cause "'a similarly situated individual of ordinary firmness' [to] have deemed [administrative remedies] [un]available," Hemphill, 380 F.3d at 688 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  Examples of affirmative misconduct include: (1)

threatening a prisoner with retaliation for filing a grievance, see Hemphill, 380 F.3d at 688; (2) failing to respond to a grievance of the issue underlying the prisoner's suit, see id. at 687 n.6 (citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)); (3) failing to transmit a grievance to an appropriate decisionmaker, see Ojo, 2012 WL 7150497, at *6; (4) failing to provide a prisoner with the forms on which to file a grievance, see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); and (5) providing a prisoner with misinformation about the grievance process on which the prisoner relied to his detriment, see Brown v. Croak, 312 F.3d 109, 111–12 (3d Cir. 2002).

Crosby has neither alleged nor produced evidence of conduct by any correction officer or other official, with respect to his ability to complain about his assault, that resembles any of the conduct described in the cases cited above.  The only conduct by jail employees that Crosby identifies as preventing him from grieving his assault is Officer Baggs's visit to the pod, approximately a week before the incident, to admonish prisoners against harassing or threatening one another.  While Crosby may not agree with the steps that Officer Baggs took in response to

his complaint, that response does not rise to the level of
affirmative misconduct that prevented Crosby from grieving his
assault, especially in light of Crosby's own testimony that
Officer Baggs did not mention any names when he addressed the
pod.  Because Crosby can identify no affirmative misconduct by
jail employees, he is not entitled to excusal from the
exhaustion requirement on grounds of unavailability or estoppel.

### 3. Special Circumstances

While there is some overlap between Crosby's two arguments,
his principal argument for excusal from the exhaustion
requirement relies upon the doctrine of special circumstances.
Crosby argues that because the grievance he filed with Officer
Baggs resulted in his beating, he was justified in deciding not
to grieve the beating itself, based upon a reasonable fear that
another grievance would result in another beating.  Pl.'s Mem.
of Law (doc. no. 35-1) 15.

In Hemphill, the court identified two kinds of special
circumstances that might justify a prisoner's failure to
exhaust.  The first is when a prisoner's failure to comply with
his jail's grievance procedure is based upon an interpretation
of the jail's procedures that is erroneous, but reasonable.  See
380 F.3d at 689-90.  The other special circumstance contemplated

13

by the Hemphill court comes into play when corrections officials threaten a prisoner in a manner that does not rise to the level of making administrative remedies actually unavailable but, still, is sufficient to support a reasonable fear of retaliation by corrections officials.  See id. at 690.

This case involves neither of the two special circumstances described in Hemphill.  Crosby does not argue that his failure to grieve his assault was the result of an erroneous but reasonable interpretation of SCHOC regulations.  And, he does not identify any threat of retaliation by correction officers that prevented him grieving his assault.  Thus, this case falls outside the boundaries of the doctrine described in Hemphill, and this court is not inclined to extend that doctrine to cover the circumstances of this case, principally because the conduct on which it is based, i.e., Officer Baggs's meeting with the prisoners on Crosby's pod, cannot be reasonably characterized as affirmative misconduct with respect to Crosby's ability to grieve future incidents.

However, even if the court were to extend the special-circumstances doctrine to cover claims based on conduct by corrections officers other than threats, such as Officer Baggs's meeting on Crosby's pod, Crosby's claim would still fail.  With regard to the special circumstance of threats of retaliation,

the operative legal standard is "whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures." Hemphill, 380 F.3d at 690 (citation, internal quotation marks, and punctuation omitted). The court presumes that a similar standard would apply to a claim such as the one Crosby is advancing here.  Even accepting as true Crosby's theory that his beating resulted from the meeting that Officer Baggs conducted in response to his grievance,[5] a person of ordinary firmness would not have been deterred from grieving the October 20 assault by the aftermath of Officer Baggs's meeting on the pod.

The impediment to Crosby's ability to satisfy this test is that the circumstances surrounding the Baggs meeting and Crosby's beating are materially dissimilar.  That is, the situation involving the report to Officer Baggs involved inmates retaliating against Crosby due to their perception of him as a "rat" or informant.  The situation involving the October 20 assault is dissimilar in that the assault was out in the open,

---

[5] For purposes of the exhaustion analysis, the court will presume this theory to be true.  As a factual matter, however, there is nothing the record to support the idea that Braley was motivated to assault Crosby because of anything that Officer Baggs said on the pod.  Rather, Crosby's own deposition testimony establishes that he and his alleged antagonists were able to set aside their differences while on the basketball court and that Braley's assault resulted from anger over losing a basketball game to Crosby.

correction officers witnessed it, and outside law enforcement
became involved.  Thus, it is hard to see how the alleged
retaliation, by inmates, that followed the Baggs meeting might
have dissuaded a hypothetical "individual of ordinary firmness"
who suffered from a public assault from utilizing the SCHOC
grievance process.  In short, because the subject of the
complaint to Officer Baggs was so different from any possible
complaint Crosby could have made in response to his assault,
Officer Baggs's response to the earlier complaint would not have
deterred a person of ordinary firmness from grieving the October
20 assault.

Finally, the court notes that Crosby attempts to analogize
this case to Marquez v. Antilus, No. 08-cv-522-SM, 2010 WL
2629409 (D.N.H. June 28, 2010), in which Judge McAuliffe denied
the defendants' motion for summary judgment for failure to
exhaust in reliance upon the special-circumstances doctrine and
the plaintiff's production of evidence that corrections officers
threatened to retaliate against him if he reported their
conduct.  In short, because Crosby has produced no evidence that
any correction officer ever threatened him with retaliation,
this case is materially distinguishable from Marquez.  Rather,
it has more in common with Thompson, 2010 WL 2629416, in which
Judge McAuliffe granted summary judgment to the defendants on

16

exhaustion grounds, over the plaintiff's estoppel-based
objection.  As Judge McAuliffe explained:

> A generalized, unspecific, and subjective belief
> or fear of retaliation on the part of an inmate cannot
> give rise to estoppel excusing exhaustion — estoppel
> principles may nullify the exhaustion requirement, but
> that type of estoppel must be based upon what the
> defendants themselves said or did.  If an inmate's
> generalized subjective fear of retaliation,
> unsupported by objective evidence of a threat, or
> other reliable grounds to fear retaliation, was
> sufficient to negate the exhaustion requirement, the
> requirement would be substantially undermined,
> contrary to the Supreme Court's holding in Porter, 534
> U.S. at 532.

Id. at *2.  So too here.  Calling Crosby's fear of further
assaults at the hands of fellow inmates a special circumstance
excusing exhaustion wound run counter to Porter and the intent
of Congress in enacting the PLRA with its strict exhaustion
requirements.

The bottom line is this.  Defendants are entitled to
dismissal of Crosby's federal claims because it is undisputed
that Crosby failed to exhaust the administrative remedies
available to him for complaining about his assault, and Crosby
has not proffered a valid justification for failing to do so.

B. Supplemental Jurisdiction

Presuming that the court would grant them summary judgment
on Counts I, II, or IV, defendants ask the court to decline to
exercise supplemental jurisdiction over Counts VI, VII-A, VII-B,

and VIII, which arise under state law.  Plaintiff objects.

A "district court[ ] may decline to exercise supplemental jurisdiction over a claim [arising under state law] . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  As the court of appeals has recently explained:

> The district court has considerable authority whether to exercise this power, considering factors such as judicial economy, convenience, fairness to litigants, and comity.  [Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991).]
>
> When a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice. Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed").

Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 191 (1st Cir. 2011) (emphasis added).  That said,

> a district court must exercise "informed discretion" when deciding whether to assert supplemental jurisdiction over state law claims.  Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).  No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness.  See id. at 257; Carnegie-Mellon [Univ. v. Cohill], 484 U.S. [343,] 350 [(1988)] (observing that this analysis is prescribed by [United Mine Workers of Am. v.] Gibbs[, 383 U.S. 715 (1966)]).

Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (parallel citation omitted).

In Roche, the court of appeals held that the district court acted "squarely within the realm of its discretion," 81 F.3d at 257, when it retained supplemental jurisdiction over state claims in a case where "[t]he litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction." Id. In contrast, in Redondo, the court of appeals held "that it was not within the district court's permissible range of discretion to decline to exercise jurisdiction over [the plaintiff's] local law claims," 662 F.3d 50, where "[t]he district court declined to exercise supplemental jurisdiction only four days before trial was scheduled to begin, when the action had been pending in federal court for more than six years, the summary judgment record had been complete for nearly a year, and the parties were almost completely prepared for trial," id. at 49.

In this case, discovery has closed, trial is scheduled for the September 16, 2014, trial period, pre-trial materials have been filed by Crosby, and pre-trial motion practice is underway.

Not only does Crosby have a reasonable interest in the expeditious resolution of his claims, so, too, does Braley have an interest in the speedy resolution of Crosby's claim against him.  Under these circumstances, judicial economy, convenience, and fairness all weigh in favor retaining jurisdiction over Crosby's state-law claims.  Accordingly, the court does not accept defendants' invitation to decline to exercise supplemental jurisdiction over those claims.

### Conclusion

For the reasons detailed above, Counts I, II, and IV are dismissed due to Crosby's failure to exhaust the administrative remedies available to him.  But, defendants' request for dismissal of Crosby's state-law claims is denied, and the case remains on track for trial of Counts VI, VII-A, VII-B, VIII, and IX.

The court concludes by addressing two loose ends.  First, it does not appear that Sgt. McGowen has ever been served. Second, Count VIII of Crosby's complaint, captioned "Respondeat Superior," appears to duplicate the negligence claim stated in Count VII-B.  Crosby has seven days from the date of this order to show cause why: (1) his claims against Sgt. McGowen should

not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; and (2) Count VIII should not be dismissed.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 3, 2014

cc:   Jacob Braley, pro se
      Jacob John Brian Marvelley, Esq.
      Daniel J. Mullen, Esq.
      Robert A. Shaines, Esq.